UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALHELOU MOTAZ,<br><br>                              Petitioner,<br><br>v.<br><br>LAROSE, Warden,<br><br>                              Respondent. | Case No.: 23-CV-516 JLS (JLB)<br><br>**ORDER DISMISSING PETITION WITHOUT PREJUDICE**<br><br>(ECF No. 1) |

Presently before the Court is Petitioner Alhelou Motaz's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1). For the reasons that follow, the Court **DISMISSES** the Petition and this action **WITHOUT PREJUDICE** for failure to respond to this Court's August 9, 2023 Order to Show Cause ("Order," ECF No. 10) and for failure to update his address in accordance with Civil Local Rule 83.11(b).

**BACKGROUND**

The United States Bureau of Immigration and Customs Enforcement ("ICE") detained Petitioner on December 4, 2021. Pet. at 4, 6. Petitioner was held at the Otay

///

///

///

Mesa Detention Center in San Diego. *See* ECF No. 7-1 (the "Exhibits") at 3.[1] On February 3, 2022, the Department of Homeland Security ("DHS") served Petitioner with a notice to appear ("NTA") in immigration court proceedings scheduled for February 16, 2022. *See id.* at 3–4. In its NTA, DHS alleged that Petitioner is a native and citizen of Israel and the Palestinian Territories, that Petitioner is not a citizen or national of the United States, and that Petitioner applied for admission at the Otay Mesa, California port of entry without a valid entry document. *Id.* at 3.

On August 12, 2022, the immigration judge assigned to Petitioner's case found Petitioner inadmissible under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), denied Petitioner's application for asylum, denied withholding of removal under the INA and Convention Against Torture, and denied deferral of removal under the Convention against Torture. *See id.* at 7. The immigration judge ordered Petitioner removed to Brazil, or, in the alternative, to the Palestinian Territories within Israel, and both DHS and Petitioner purportedly waived their right to appeal. *See id* at 8–9.

Petitioner filed the instant Petition on March 20, 2023, asserting as Ground One that he had been held in detention "[b]eyond the [l]egal [l]imit. Pet. at 6. Under the heading "Supporting facts," Petitioner claims that DHS determined that he has a credible fear of torture should he return to Palestine, but ICE concluded, wrongly and without corroborating evidence, that he has terrorist affiliations. *Id.* As a separate ground, Petitioner alleges that ICE breached his privacy by sharing information regarding Petitioner's asylum application online. *Id.* Petitioner argues that because ICE "inadvertently placed" his information in the public domain, he faces an increased risk of harm if he is not allowed to remain in the United States. *Id.* Petitioner asks the Court to either "[d]irect ICE to immediately parole [him] into the United States" or to order ICE to

---

[1] When citing to the Petition and Exhibits, the Court refers to the blue numbers stamped in the upper right-hand corner of each page by the District's Case Management/Electronic Case Filing system.

"release [him] from custody and institute [his] removal from the United States with immediate effect." *Id.* at 7.

After Petitioner paid the required filing fee on May 11, 2023, *see* ECF No. 4, the Court ordered Respondent Larose ("Respondent") to show cause why the Petition should not be granted, *see* ECF No. 5. Respondent filed a Return ("Ret.," ECF No. 7) on June 8, 2023, accompanied by the above-cited Exhibits and a Declaration by Detention and Deportation Officer Joedie Scott ("Scott Decl.," ECF No. 7-2). According to the Scott Declaration, after "the Government of Israel granted ICE's request to conduct a removal flight to Gaza scheduled for July 2023," ICE scheduled Petitioner for removal on that flight and notified petitioner of his imminent removal on May 30, 2023. Scott Decl. ¶¶ 5–7.

Petitioner did not file a traverse, *see generally* Docket, but on June 26, 2023, the Court received a letter from Petitioner stating that he could not respond to the Return because he could not read or write in English and was in solitary confinement. *See* ECF No. 8. On August 4, 2023, Respondent filed a Notice of Petitioner's Removal ("Notice," ECF No. 9), stating that "[o]n July 18, 2023, [ICE] removed Petitioner from the United States via charter flight" and urging the Court to dismiss the Petition as moot. Notice at 2 (citing ECF No. 9-1 (the "Warrant")).

The Court then issued an Order to Show Cause asking Petitioner to explain why the Petition should not be dismissed as moot. Order at 4. The Court explained that "[i]f Petitioner fail[ed] to file a response on or before September 1, 2023, the Court w[ould] issue a final Order dismissing the Petition as moot and closing the above-named case." *Id.* (emphasis omitted). The copy of the Court's Order mailed to Petitioner was returned as undeliverable on August 21, 2023. *See* ECF No. 11. To date, Petitioner has neither responded to the Court's Order nor contacted the Court to update his address. *See generally* Docket.

/ / /

/ / /

/ / /

# LEGAL STANDARD

## I. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, and as such have an obligation to dismiss claims for which they lack subject-matter jurisdiction. *See Demarest v. United States*, 718 F.2d 964, 965 (9th Cir. 1983). When evaluating whether it possesses subject matter jurisdiction, a court may ordinarily "'hear evidence regarding jurisdiction' and 'resolv[e] factual disputes where necessary.'" *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (alteration in original) (quoting *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir. 1983)). If a court's determination of whether subject matter jurisdiction exists involves factual issues which also go to the merits, however, the party asserting lack of jurisdiction "should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Augustine*, 704 F.2d at 1077.

### A. Mootness

"Under Article III of the Constitution, federal courts have jurisdiction only over a 'case or controversy.'" *McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 982 (9th Cir. 2002) (quoting *Public Utils. Comm'n v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996)). Where a case no longer presents a case or controversy because the litigant has lost "a personal stake in the outcome of the suit," a court must dismiss the case as moot. *Abdala v. INS*, 488 F.3d 1061, 1063 (9th Cir. 2007). A litigant lacks such a personal stake when "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) (internal quotation marks omitted) (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). In other words, a case becomes moot when "interim relief or events have deprived the court of the ability to redress the party's injuries." *United States v. Adler Creek Water Co.*, 823 F.2d 343, 345 (9th Cir. 1987).

/ / /

/ / /

### B. *Immigration-Related Habeas Claims*

In the context of immigration-related habeas claims, Congress has further limited district courts' exercise of subject matter jurisdiction. *See* 8 U.S.C. § 1252(a)(5) (making "a petition for review filed with an appropriate court of appeals" the "sole and exclusive means for judicial review of an order of removal"); *id.* § 1252(b)(9) (consolidating review of all questions of law and fact "arising from any action taken or proceeding brought to remove an alien from the United States" into "judicial review of a final order"); *id.* § 1252(g) (stripping federal courts of jurisdiction to hear any claim arising from the Attorney General's "decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders"). Pursuant to these statutes, challenges to final orders of removal "may not be reviewed in district courts, even via habeas corpus, and may be reviewed only in the courts of appeals." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1690 (2020); *see also J.E.F.M v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) ("Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through [a petition for review filed with a court of appeals].").

Federal district courts therefore lack jurisdiction to review "a claim by an alien, however . . . framed, [which] challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal." *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) (quoting *Morales-Izquierdo v. DHS*, 600 F.3d 1076, 1082–83 (9th Cir. 2010)). Instead, a district court reviewing an immigration detainee's habeas petition may only review claims that are "independent of or collateral to the removal process," including claims that immigration detainees are being held in detention without any established timeline for release. *J.E.F.M.*, 837 F.3d at 1032.

## II. Failure to Prosecute

Where a habeas petitioner fails to prosecute their case by either failing to respond to a court order or failing to comply with a court's local rules, a court may dismiss the petition. *See Ying Jiao Ye v. Nordheim*, No. 218CV10072JVSKES, 2019 WL 979245, at *2

(C.D. Cal. Feb. 27, 2019); *Junqi Zhang v. Lynch*, No. EDCV152348JGBSP, 2016 WL 1274084, at *2–3 (C.D. Cal. Mar. 30, 2016); *Jackson v. Gonzalez*, No. CV07-0893-PHX-MHM, 2007 WL 2725260, at *3–4 (D. Ariz. Sept. 17, 2007). A court's exercise of discretion in this regard is informed by the factors outlined in *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (per curiam). These factors include "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases o[n] their merits; and (5) the availability of less drastic sanctions." *Id.* (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir.1986)).

## ANALYSIS

Petitioner's claims grounded in the length of his detention are moot. Where a habeas petition "raise[s] claims that [are] fully resolved by release from custody," that petition is rendered moot when the petitioner is released. *Abdala*, 488 F.3d at 1065. Here, the first ground of the Petition relates to the length of Petitioner's detention; in it, Petitioner asserts that his continued detention is not justified because he lacks terrorist affiliations and therefore does not pose a threat to the safety of others. *See* Pet. at 6. Petitioner's sole prayer for relief is that the Court "[d]irect ICE to immediately parole [him] into the United States, or "[a]lternatively," order ICE to "release [him] from custody and institute [his] removal from the United States with immediate effect." *Id.* at 7. According to undisputed facts in the record, Petitioner was released from custody and removed from the United States on July 18, 2023. *See* Warrant at 2. Petitioner received the relief from detention that he requested. So, with regards to Petitioner's claims relating to the length of his detention, there is no longer an extant controversy upon which the Court can act. *See Ying Jiao Ye*, 2019 WL 979245, at *3.

The possibility remains, however, that the Petition is not entirely moot, as the Petition could be construed as seeking more than release from ICE custody. In ground two of the Petition, Petitioner alleges that ICE published the details of his asylum application online, which increases the risk of harm to him should he be removed from the United

States. Pet. at 6. Petitioner thus implies (1) that circumstances have changed since the immigration judge evaluated his case and (2) that those changed circumstances may warrant granting Petitioner asylum. *See id.*; Exhibits at 7. Because Petitioner might still seek some form of relief, the Court afforded Petitioner an opportunity to respond to Respondent's contention that his Petition is moot. *See* Order at 4.

The Court ordered Petitioner to demonstrate why his release from custody did not moot his Petition by September 1, 2023. *Id.* More than two months have passed since the Court's deadline, yet Petitioner has neither responded nor otherwise contacted the Court. *See* Docket.

Instead, the copy of the Court's Order mailed to Petitioner was returned as undeliverable on August 21, 2023. ECF No. 11. Civil Local Rule 83.11(b) requires Petitioner, as a party proceeding pro se, to keep the Court and opposing parties advised as to Petitioner's address. S.D. Cal. CivLR 83.11(b). Once the Clerk's mail to Petitioner was returned as undeliverable, Rule 83.11(b) required Petitioner to notify the Court of his new address within sixty days. *See id.* If a party fails to update their address, Rule 83.11(b) allows a court to "dismiss the action without prejudice for failure to prosecute." *Id.* Petitioner's sixty-day deadline to update his address expired on October 20, 2023.

Because Petitioner has neither complied with this Court's Order nor Civil Local Rule 83.11(b), the Court proceeds to analyze whether the *Ghazali* factors support dismissing this action without prejudice. *See Junqi Zhang*, 2016 WL 1274084, at *2–3 (dismissing a released immigration detainee's habeas petition for failure to prosecute after the detainee failed to update their address as required by local rule or otherwise respond to the court's order to show cause regarding mootness).

The public's interest in the expeditious resolution of litigation, the Court's need to manage its docket, and the availability of less drastic sanctions all favor dismissal in this case. Now that Petitioner has been released from custody, *see* Warrant, there is no indication that Petitioner will contact this Court to resume the adjudication of his Petition. Indeed, this case has languished on the Court's docket for more than three months without

action. *See* Docket.  And, absent a way to contact Petitioner, the Court cannot employ less drastic alternatives to compel Petitioner to litigate his case to its conclusion.  *See Carey v. King*, 856 F.2d 1439, 1441 (9th Cir. 1988).  In circumstances such as these, the Court need not hold this case "in abeyance indefinitely," but instead may resort to dismissal without prejudice.  *Id.*; *see also Ying Jiao Ye*, 2019 WL 979245, at *2.

The next factor—the risk of prejudice to Respondent—also weighs in favor of dismissal.  As Petitioner's unreasonable delay stretches on, a presumption of prejudice to Respondent arises.  *See In re Eisen*, 31 F.3d 1447, 1452–53 (9th Cir. 1994).  Though Petitioner could rebut this presumption by providing a reason for his delay, *id.*, Petitioner has offered no such reason, *see* Docket.  Thus, this factor weighs in favor of dismissal.  *See Junqi Zhang*, 2016 WL 1274084, at *3.

Finally, though the public policy favoring disposition of this action on its merits weighs against dismissal, that factor does not outweigh the other four where, as here, "Petitioner appears to have abandoned this action upon his release from custody."  *See Jackson*, 2007 WL 2725260, at *4.

The balance of the *Ghazali* factors therefore weighs in favor of dismissing the Petition without prejudice.

## CONCLUSION

In light of the foregoing, the Court **DISMISSES WITHOUT PREJUDICE** the Petition and this action for Petitioner's failure to respond to the Court's August 9, 2023 Order and failure to notify the Court of his current mailing address as required by Civil Local Rule 83.11(b).  As this concludes the litigation in this matter, the Clerk of the Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: November 27, 2023

Hon. Janis L. Sammartino
United States District Judge